**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 04:22 PM January 23, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| FLOWER FACTORY, INC. et al., ) | CASE NO. 11-60406 |
| ) | |
| Debtors. ) | ADV. NO. 13-6024 |
| ) | |
| THE FLOWER FACTORY, INC., et ) | JUDGE RUSS KENDIG |
| al., CREDITOR TRUST, BY AND ) | |
| THROUGH DAVID WEHRLE, IN ) | |
| HIS CAPACITY AS CREDITOR ) | |
| TRUSTEE, ) | **MEMORANDUM OF OPINION** |
| ) | **(NOT FOR PUBLICATION)** |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| MAGIC CREATIONS, INC., ) | |
| ) | |
| Defendant. ) | |

This adversary proceeding is an action by the Creditor Trust ("Plaintiff") to recover preferential payments made by Debtor[1] to Defendant and to deny Defendant any recovery on its

---

[1] "Debtor" will refer to Debtor Flower Factory, Inc. and the related entities that filed bankruptcy on February 15, 2011 as part of jointly administered case number 11-60406.

1

claims until such time as the preferences are repaid. On November 26, 2013, Plaintiff filed a motion for summary judgment seeking to declare the subject transfers preferential under 11 U.S.C. § 547(b) and to order their recovery pursuant to 11 U.S.C. § 550(a). Defendant opposes the relief.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The following constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Debtor and Defendant have done business for approximately twenty years. Debtor operated seven retail stores that sold party goods, craft supplies, and other merchandise to the public. Defendant was a supplier of goods to Debtor under purchase agreements executed by the parties. At or around the time that Defendant shipped goods to Debtor under the agreements, it would also send an invoice that included the credit terms and the total amount of the goods shipped. Debtor was then obligated to pay the invoice.

Before Debtor filed a chapter 11 bankruptcy petition, Defendant shipped $14,410.54 in goods to Debtor under invoice #57133, dated October 29, 2010. The invoice terms are "net 30 days." According to Plaintiff, Debtor made three payments on the invoice in the ninety day preference period: $4,820.18 on or about November 19, 2010; $4,820.18 on or about December 3, 2010, and $4,820.18 on or about December 23, 2010.[2] Defendant's records match save the amount of the final payment which Defendant claims was $4,770.18.

Debtor typically made late payments to Defendant. On average, invoices were paid 107 days after receipt. At no time in the parties' relationship did Debtor pay the invoice on "net 30" terms as provided for in the invoice. Prior to the invoice in question, the average invoice was $3,816.59. It does not appear Debtor made installment payments on other invoices. The goods shipped under invoice #57133 were abnormally large for the parties' dealings. Only one other invoice in the parties' relationship was as large. Although the parties had done business together for two decades, only transactions dating to 2007 were provided to the court.

## DISCUSSION

Motions for summary judgment are governed by Federal Bankruptcy Rule 7056 which adopts Federal Rule of Civil Procedure 56 into bankruptcy practice. The court is instructed to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). Thus, when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is compulsory. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[2] These amounts total $50.00 more than the invoice.

The elements of a preference are set forth at 11 U.S.C. § 547(b). To be considered preferential, the transfer must be

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>    (A) the case were one under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The burden of proof of these elements rests with the trustee or, in this case, Plaintiff. 11 U.S.C. § 547(g).

Defendant challenges only the second of these elements, whether the transfer was made on account of an antecedent debt. Plaintiff argues that "[t]he transfers to Defendant were made in satisfaction of the obligations reflected in invoice #57133." (Pl.'s Mot. Summ. J. ¶ 25, ECF No. 19-1) A copy of the invoice is attached to the motion for summary judgment as Exhibit A. Defendant doesn't deny that the transfers were made on behalf of the invoice but states, without explanation, that the debts were not antecedent. "A debt is antecedent if it is incurred before the transfer in question." Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee), 530 F.3d 458, 464 (6th Cir. 2008) (citing 5 Collier on Bankruptcy ¶ 547.03[4])). Clearly, when Defendant shipped the goods to Debtor, and Debtor received those goods, Debtor then had an obligation to pay for the goods. This created the debt which does pre-date the transfers, so the debt is antecedent to the transfers. Plaintiff has therefore established this element.

Defendant next argues that the transfers made by Debtor were in the ordinary course of business, a defense under 11 U.S.C. § 547(c)(2). Even if all the elements of a preference exist, a trustee (or Plaintiff) cannot avoid a transfer

> to the extent that such transfer was in payment of a debtor incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>    (A) made in the ordinary course of business or financial

3

> affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Plaintiff argues that Defendant's ordinary course defense arguments should be struck because they are not responsive to the motion, Defendant's affirmative defenses have been preserved for trial, and raising the affirmative defense now is the equivalent of an untimely motion for summary judgment by Defendant. The court disagrees. While Defendant's failure to move for summary judgment may mean that judgment cannot be entered in its favor, Defendant is permitted to argue its defenses to challenge Plaintiff's right to avoidance and recovery of the allegedly preferential transfers. To argue otherwise would eradicate Defendant's ability to advance its ordinary course defense.

Since Plaintiff has shown that the transfers in question are preferential under 11 U.S.C. § 547(b). Defendant now bears the burden of proof of the ordinary course defense to protect the transfers from avoidance. 11 U.S.C. § 547(g). To determine whether the payments were made in the ordinary course, the court is to look at the history of dealing between the parties, the timing of the payments, the amounts at issue, and the circumstances of the transaction. Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.), 888 F.2d 42 (6th Cir. 1989) (citation omitted). Looking at these factors, the court cannot find for Defendant.

According to Defendant, Debtor was slow to pay invoices and did not pay on the "net 30" terms referenced in the invoice. This is true. Defendant also accurately states that the average invoice repayment term, including this invoice, was 107.36 days[3] and produced a chart showing the parties' transaction history since 2007. However, Debtor mistakenly thinks that a payment within this time frame constitutes ordinary course. The court disagrees. The entire invoice was paid in fifty-four days, or in nearly half the time as was ordinary between the parties. Two-thirds of the invoiced amount was received within thirty-five days. Additionally, this invoice was paid in installments and the chart doesn't show any installment payments on other invoices. These all demonstrate that the payments were not ordinary.

Two other items are worth noting. First, the payments themselves were abnormally large when looking at the parties' history. Of the other ten invoices, only two exceeded the installment payment amounts. Only one, from April 2010, was similar in amount to #57133. It was paid in seventy-three days and was not paid in installments. What this suggests is that, on the whole, Debtor paid smaller debts more slowly. When viewed in this light, there is no way the court can find the transfer between Debtor and Defendant were ordinary between the parties.

Next, the court must consider whether the transfer was made on ordinary business terms, "mean[ing] that the transaction was not so unusual as to render it an aberration in the relevant industry." Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.), 91 F.3d 811, 818 (6th Cir. 1996)). Defendant bears the burden of proof of the defense by a preponderance of the evidence.

---
3  If this invoice is not included, the average repayment term is closer to 113 days.

In re Carled, 91 F.3d at 813 (citing Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.), 957 F.2d 239, 242 (6th Cir. 1992)).

Defendant filed an affidavit in support of its response to the motion for summary judgment that contains the following two paragraphs that speak to the relevant industry:

> 6. Large retailers just do not make payments in accordance (sic) to a relatively small supplier so that payment is not timely expected from them.
>
> 7. The usual time period from invoicing until payment from large retailers is net 60-110 days. One expects this delay in payment. Our industry is a smaller supplier of retail goods to a conglomerate. The conglomerate sets its own rules and its rules are "take it or leave it." Wal-Mart is a perfect example. Wal-Mart forces suppliers to sell to them at ridiculously low margins above cost or they just move to a competitor of the supplier. Hoping that the sales to such a large retailer will be at least marginally profitable in higher volume, the supplier accepts the strong-armed terms.

(Def.'s Aff. ¶¶ 6 – 7, ECF No. 35)

The court cannot find that Defendant's proffer of the industry standard is legally sufficient. It borders on anecdotal rather than factual and provides next to nothing concrete about an industry standard. The statements Defendant does make are in a vacuum, without any connection to specifics within the industry. Defendant attempts to compare Debtor, with its seven retail stores, to Walmart. It identifies Debtor as a "large retailer" but provides no parameters for this term. Defendant failed to meet its burden of proof that the transfer was made in accordance with ordinary business terms.

## **CONCLUSION**

Plaintiff, seeking to recover an alleged preferential transfer, bears the burden of proof on the preference elements. Plaintiff established that the transfers between Defendant and Debtor, in the 90 days before Debtor's bankruptcy filing, were preferential. The transfers were made on account of an antecedent debt that arose when Defendant shipped goods to Debtor.

Defendant failed to prove that the transfers are protected by the ordinary course of business defense available under 11 U.S.C. § 547(c)(2). First, the payments were made more quickly than normal between the parties. Second, there was no evidence that Debtor had ever paid previous invoices in installments. The § 547(c)(2)(A) defense therefore fails. Regarding the § 547(c)(2)(B) defense, Defendant did not introduce legally sufficient evidence of an industry

5

standard and therefore did not meet its burden of proof by a preponderance of the evidence. The § 547(c)(2)(B) defense therefore also fails.

A question of fact remains as to the aggregate amount of the transfers. Plaintiff's affidavit indicates the transfers totaled $14,460.54 while Defendant's has a total amount of $14,410.54. The court will enter judgment for the lesser amount and allow the parties to petition for further hearing as necessary.

Although Plaintiff did not move for summary judgment on Count III, the court finds that § 502(d) operates by matter of law with the court's findings of fact and conclusions of law set forth above. Consequently, the court will also find in Plaintiff's favor on Count III. To the extent Defendant has a claim against Debtor, that claim is disallowed until Plaintiff recovers the preferential transfers.

An order granting Plaintiff's motion for summary judgment and entering judgment in Plaintiff's favor will be entered immediately.

\#    \#    \#

**Service List:**

Nathan A. Wheatley
Calfee, Halter & Griswold LLC
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607

Brian J. Halligan
Halligan & Lang Co., LPA
1149 East Main Street
PO Box 455
Ashland, OH 44805

Deborah L Mack
P O Box 486
Mansfield, OH 44901-0486

6

13-06024-rk    Doc 39    FILED 01/23/14    ENTERED 01/23/14 16:33:31    Page 6 of 6